```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2

 3    ------------------------------------X
                                         :
 4    JONES,                             :  10-CV-00897 (PKC)
                                         :
 5                     Plaintiff,        :
                v.                       :
 6                                       :  500 Pearl Street
      KING, et al.,                      :  New York, New York
 7                                       :
                      Defendants.    :  August 20, 2012
 8    ------------------------------------X

 9
                  TRANSCRIPT OF TELEPHONIC CONFERENCE
10           BEFORE THE HONORABLE KEVIN NATHANIEL FOX
                   UNITED STATES MAGISTRATE JUDGE
11

12    APPEARANCES:

13    For the Plaintiff:       DAMON JONES
                               Pro Se
14

15    For the Defendant:       JOSEPH ANTHONY MARUTOLLO, ESQ.
                               New York City Law Department
16                             100 Church Street
                               New York, New York  10007
17

18

19    Court Transcriber:       RUTH ANN HAGER
                               TypeWrite Word Processing Service
20                             211 N. Milton Road
                               Saratoga Springs, New York  12866
21

22

23

24

25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
```

2

1           THE CLERK: <u>Jones v. King,</u> <u>*et al.*,</u> case number 10-CV-

2      00897.

3           Will the plaintiff please state your name for the

4      record?

5           MR. JONES:  Damon Jones.

6           THE CLERK:  Will the attorney for the defendant

7      please state your name for the record?

8           MR. MARUTOLLO:  Joseph Marutollo.

9           THE COURT:  Good morning.  This is Judge Fox.

10          MR. MARUTOLLO:  Good morning, Your Honor.

11          MR. JONES:  Good morning, Your Honor.

12          THE COURT:  Let's turn to the August 8 writings that

13     the defendants' counsel sent to me complaining of the

14     responses made by Mr. Jones to the defendants' discovery

15     demands.

16          Mr. Jones, did you receive a copy of the August 8

17     writings?

18          MR. JONES:  Yes, I did.

19          THE COURT:  Okay.  Let me ask in the first instance

20     with respect to the interrogatories that are the subject of

21     the writing, some of the interrogatory requests seem to go

22     beyond that which is allowed in the Local Rules for the first

23     set of interrogatories.

24          MR. MARUTOLLO:  Which interrogatories, Your Honor?

25          THE COURT:  Well, you're limited to getting the --

3

1    in the first instance the names of witnesses, information

2    about the category of damages, and -- let me turn to my notes

3    because some of these statements by the City and others

4    employed don't fall in that category -- that would be three;

5    the information about related criminal matters that would be

6    two; the information regarding Medicaid and treatment for

7    psychological and physical injuries; information about

8    healthcare providers, those who may not be witnesses --

9    obviously if they're going to be witnesses that would be

10   covered by Local Civil Rule 33.3 -- work records, whether

11   there have been applications for Medicaid or Medicare;

12   requests for the identity of any government entity to whom the

13   plaintiff has lodged a complaint regarding the incident;

14   requests regarding the number of arrests; information about

15   conviction for crime.  All of those don't fit within the Local

16   Rule 33.3.  So why are they proper interrogatories in the

17   first instance?

18        MR. MARUTOLLO:  Well, I think first, you know, a few

19   of them -- for instance, the work records, in this case, you

20   know, it's unclear if Mr. Jones is seeking any claims for lost

21   income.  There hasn't been any indication that, you know, one

22   way or another whether he is seeking any kind of claims

23   related to his employment or loss of employment as a result of

24   this incident.  So, you know, one of the reasons we added that

25   interrogatory was to try to figure out exactly his work

4

1   history, assuming that he does have a lost income claim, to

2   get more information -- more discoverable information in that

3   regard.

4           THE COURT:  Well, why don't you just ask for the

5   computation of the various categories of damages as is allowed

6   by the Local Rule?  That would capture that.

7           MR. MARUTOLLO:  Well, the biggest -- we haven't

8   received any indication at all from Mr. Jones regarding any

9   computation of damages or any -- you know, any claims apart

10  from what is actually in the complaint.

11          THE COURT:  Well, regardless of what he's given to

12  you, why are your interrogatories as I cataloged them in

13  compliance with the Local Rule?  All of them are not limited

14  solely to the names of witnesses, the category of damages, and

15  whether there's any insurance.  You've gone beyond that.  So

16  why are those that exceed that -- or those categories -- those

17  three different categories proper interrogatories in the first

18  instance?

19          MR. MARUTOLLO:  Well, I think they're still relative

20  to the subject matter of this action.  I think that they are

21  still --

22          THE COURT:  But that's not the issue.  The Local

23  Rule tells you what you can ask in the first instance by way

24  of interrogatory.  It doesn't mention anything about criminal

25  record, so why is that a proper interrogatory in the first

5

1   instance?

2          MR. MARUTOLLO:  Well I think a conviction history is

3   relevant to the subject matter and --

4          THE COURT:  I'm not asking about what is relevant to

5   the subject matter of the action.  I'm asking you about your

6   compliance with Local Rule 33.3.  Where in that Local Rule

7   does it speak to criminal convictions?

8          MR. MARUTOLLO:  Well, Your Honor, I -- well, again,

9   I think it's -- in terms of 33.3(a) there's discussion of the

10  computation of each category of damage alleged.  I think the

11  convictions, for instance, would go to a computation of

12  damages because it's -- Mr. Jones has been convicted

13  previously.  That may affect his, you know, emotional damages

14  with respect to any arrest or conviction and --

15         THE COURT:  I disagree with you.  Whether he's been

16  convicted for a crime, I imagine, is not one of the things

17  that Mr. Jones was contemplating in asking for damages in this

18  action.  If you want to find out what his damages calculation

19  is then you can ask an interrogatory as the Local Rule allows,

20  but it doesn't speak to asking about criminal history whether

21  you've been arrested.  Where does that appear in Local Rule

22  33.3?

23         MR. MARUTOLLO:  I don't think it explicitly appears

24  there, Your Honor, but I --

25         THE COURT:  All right.  Then you need to present

6

1  interrogatories that comply with the Local Rule.

2        MR. MARUTOLLO:  Well, respectfully, Your Honor,

3  there has been cases in this Circuit that have indicated that

4  that particular interrogatory about conviction history is

5  within Local Civil Rule 33.3, you know, that fits in those

6  confines.

7        THE COURT:  I don't agree.  Is there a ruling from

8  the Court of Appeals that says that?

9        MR. MARUTOLLO:  No, Your Honor.

10        THE COURT:  Okay.  So I'm not convinced that all of

11  these interrogatories are proper in the first instance.  They

12  may be proper as discovery goes forward, but the Local Rule is

13  quite clear about what can be asked by way of interrogatory in

14  the first instance and all of these things that you've asked

15  for, I don't believe, fit within the Local Rule.

16        MR. MARUTOLLO:  Well I think, Your Honor, one issue

17  that I think does fit within the Local Rule and, I think

18  frankly, is the most significant issue right now is the --

19  Mr. Jones' failure to comply with the Court's June 12th order

20  regarding medical releases.  Mr. Jones is alleging physical

21  injury as a result of this incident.  We've -- I've spoken to

22  him, you know, privately about this issue as well and we

23  really need access to these medical records for purposes of

24  discovery and to understand exactly what treatment he -- and

25  what injuries he's even alleging in this incident.

7

1            THE COURT:  I agree.  Mr. Jones --

2            MR. JONES:  Okay.

3            THE COURT:  -- your adversary is focusing on the

4    interrogatory number 4.  And back to the conference we had

5    previously --

6            MR. JONES:  Right.

7            THE COURT:  -- you are going to have to provide

8    information regarding your medical and/or psychological

9    condition --

10           MR. JONES:  Okay.

11           THE COURT:  -- and allow the defendants to get

12   access to that.  You have to execute the authorizations.

13           MR. JONES:  Okay.  My -- well, my understanding was

14   that I needed to come -- as Your Honor just pointed out, it

15   was several set -- sets of interrogatories that were just --

16   just way out there and was just kind of confusing.  And

17   I'll -- I mean -- as I just said, with the -- with respect to

18   the medical records, I wanted to further get an understanding

19   from you before I did anything.

20           So what I did was on August the 10th, I provided

21   counsel with certain medical information pieces that were what

22   would be suitable at this time until -- until we get this --

23   this -- this thing regarding Local Rule 33.3 straight.  You

24   just pointed that out because there were -- were several

25   things that -- that -- that were being requested that --

8

1   really was kind of overboard.  So if you're saying the same

2   thing that at this time all I need to do is release the

3   medical records and that's it?

4           THE COURT:  No.  You have to do what you were

5   directed to do through the June 14 order, which was to provide

6   authorization permitting the defendants to get access to your

7   medical records.  And your adversary has indicated that

8   authorizations were provided to you but you haven't signed

9   them and returned them, so you need to do that.

10          MR. JONES:  Okay.  Now, what about the -- and as far

11  as the rest of the interrogatories, what is it 5, 6, 8, 9, 13,

12  14?  It's so many.

13          MR. MARUTOLLO:  Well, respectfully first, Your

14  Honor, with respect to those medical releases, we were hoping

15  to receive a date certain for him -- for Mr. Jones to execute

16  them only because we have a discovery deadline in this case of

17  October 15th and it often takes a month or so to actually get

18  the documents from -- at least in my own personal

19  experience -- from the hospitals and particularly from the

20  correctional health services, which is the likely source of

21  some of these medical records.

22          MR. JONES:  October the 13th.

23          MR. MARUTOLLO:  I believe October 15th is the end of

24  discovery -- fact discovery in this case.

25          THE COURT:  So Mr. Jones --

1          MR. JONES:  Yes.

2          THE COURT:  -- can you execute the authorizations

3    and get them to the defendants' counsel by the end of this

4    week?

5          MR. JONES:  I'll -- that -- I'm sorry.  You -- can

6    you say that again, sir?

7          THE COURT:  Can you execute -- can you sign the

8    authorizations and get them to the defendants' counsel by the

9    end of this week?

10          MR. JONES:  I don't -- are you -- are you telling me

11   to -- to do so?

12          THE COURT:  I want to ensure that you can do it

13   within a time certain, so I'm asking if you can do it by the

14   end of this week.

15          MR. JONES:  Well, I'm --

16          THE COURT:  If you cannot let me know that and then

17   we'll go on from there.  If you can then we'll fix that as the

18   time and move on.

19          MR. JONES:  Okay.  I cannot do because I'm looking

20   to a -- for a protective order in regards to the medical

21   information.

22          THE COURT:  Why are you entitled to a protective

23   order?

24          MR. JONES:  Because he's asking for the past ten

25   years of my medical history and my -- and work history and my

1   Social Security and all these things.  I mean, you know,

2   government inquiries made regarding injury.  I mean, this is a

3   lot of stuff he's asking for and, you know, I mean, these --

4   all these cases [indiscernible] during my arrest -- arrest on

5   April 11, 2008 where I was cuffed and tased that's the only

6   situation I've only had -- ever had so, I mean, with respect

7   to prior convictions there were none.  I have a state job.  I

8   couldn't have a record.  Could not have had a felony

9   conviction or a misdemeanor conviction.  So that's -- I'm a

10  bit confused about how that works.  You know, I was made to

11  understand that I'm entitled to a protective order with

12  regards to information regarding my medical history.

13          THE COURT:  All right.  Well, you've mixed different

14  things with the discussion of the medical records, but

15  interrogatory number four doesn't have the ten-year proviso

16  that is referenced in other interrogatories and I was going to

17  question defendants' counsel about that time frame, but four

18  speaks specifically to the injuries that result from the

19  incident that gives rise to this action.

20          MR. JONES:  Right.  But if I've given him

21  information regarding that August the 10th.  That's -- that

22  was -- I mean, that was my first set of information.  I fully

23  intend to give him more.  But I -- it just can't happen any

24  time in which the defendants are asking for.  I'm still -- I'm

25  still being -- being seen by my medical doctors.  I'm being --

1    I'm still under treatment and medication and my arm is limited

2    to certain movements, so I mean I'm kind -- I'm in a bit of a

3    jam here.

4            MR. MARUTOLLO:  Respectfully, Your Honor, we haven't

5    received any, you know, as he stated any releases,

6    particularly for any treatment -- you know, again from this

7    April 12, 2008 incident we haven't received anything.

8            MR. JONES:  The releases and the information that

9    were -- was given to you are two different things.  You did

10   receive medical information from me.

11           MR. MARUTOLLO:  We received medical information,

12   Your Honor, that was from a variety -- it seems like a variety

13   of sources, but that the date went back to October 2010.  And,

14   again, I think it emphasized the need for a release here

15   because it was just documents that were not -- were not

16   complete, basically.  It was just kind of different dates that

17   didn't really kind of go with one another.  And there's

18   frankly not enough information to understand what exactly --

19   what was produced.

20           So, again, what we're hoping for is a medical

21   release here so we can understand exactly what treatment he

22   received, if any, for this April 12, 2008 incident.

23           MR. JONES:  Well, Your Honor, I -- I mean, I did

24   provide him with my medical records from Rikers Island.  Now

25   where -- what he can do is he has access to that.  He can

1  gather all of that stuff.  I gave him a list of medications

2  that I was taking and they're from the beating I've taken from

3  the police.  You know, well, my body was all beat up and the

4  medicine, Naproxen, is what I currently still take.  I was

5  taking that in 2008 upon my arrest.  Now, all of the stuff --

6  the stuff is acceptable.  If he doesn't (inaudible) --

7             THE COURT:  Mr. Jones, I'm not hearing you clearly.

8             MR. JONES:  Hello?

9             THE COURT:  Mr. Jones?

10            MR. JONES:  Hello?

11            THE COURT:  Yes, Mr. Jones?

12            MR. JONES:  Can you hear me?

13            THE COURT:  I'm not hearing you clearly.

14            MR. JONES:  Hello.

15            THE COURT:  Yes.

16            MR. JONES:  I'm sorry.  I'm having a problem with my

17 phone here.

18            THE COURT:  All right.  That's better.

19            MR. JONES:  Yes.  I mean, you know, he can access

20 this information.  That's why I gave him the list of

21 medications from Rikers Island.

22            MR. MARUTOLLO:  Respectfully, Your Honor, I cannot

23 access that information.  We did not receive any list of

24 medication.  And the thing that we sent Mr. Jones was a

25 release so that we could access those documents.  And we

13

1  haven't received that release yet and that's the same release

2  we discussed at the June conference.

3        MR. JONES:  He gave me records from Rikers Island.

4  How -- how can you then not have access?

5        MR. MARUTOLLO:  I don't have access.

6        MR. JONES:  In the packet that you sent me, sir,

7  information from Rikers Island was in that packet.

8        MR. MARUTOLLO:  The only thing that was sent from

9  Rikers Island, Your Honor, was a document indicating that he

10 was brought to Rikers Island.  Any medical documents, however,

11 we don't have access to unless we get a properly authorized

12 release.

13        MR. JONES:  And that release will get you those

14 records from --

15        MR. MARUTOLLO:  And again, respectfully, Your Honor,

16 that's the same release we've sent now, I believe, on three

17 different occasions regarding this case.

18        MR. JONES:  Well, can I get them?

19        MR. MARUTOLLO:  Definitely.  Once we receive the

20 documents -- once we receive the medical records we will

21 definitely, you know, as soon as we get them, we're going to,

22 you know, produce them to you as part of discovery.

23        THE COURT:  As I read the document request and the

24 interrogatory, the time frame is not the ten years that

25 applies to other interrogatories and document requests but

14

1   five years from the incident, not 10.

2          MR. JONES:  Okay.  I'm seeing that, also.  But,

3   it's -- it started --

4          THE COURT:  In any event, I don't think that in a

5   circumstance where you are claiming that you suffered

6   injuries, physical and psychological, that it's appropriate to

7   issue a protective order that would prevent the defendants

8   from accessing medical and/or psychological records.  The time

9   frame stretching back five years to ensure that there is not

10  some other event or events that account for the injuries or

11  the damages that would be sought in connection with the

12  particular incident that gives rise to the action is

13  reasonable.

14         So, Mr. Jones, I'm not going to issue a protective

15  order.  You have to execute the authorizations that will allow

16  the defendants' counsel to obtain the medical and

17  psychological records.

18         MR. JONES:  And that's just for that.

19         THE COURT:  I'm sorry.

20         MR. JONES:  Just for what you just -- for the

21  medical -- the medical records and the psychological

22  information.

23         THE COURT:  Right, stretching back five years from

24  the incident.

25         MR. JONES:  Okay.  Five years is fine.  Okay.  All

1   right.  So we're speaking from 2007 or 2008.

2          MR. MARUTOLLO:  And also, Your Honor, I'm not sure

3   if Mr. Jones answered the question regarding whether he could

4   get the authorization by the end of this week.

5          THE COURT:  I'm coming back to that now.  Now that

6   I've determined not to issue a protective order can you get

7   those authorizations to defendants' counsel by the end of the

8   week, Mr. Jones?

9          MR. JONES:  I would say not.  Can I just get him the

10   records?

11          THE COURT:  No, he'd like to get them from the

12   source himself.  That's the purpose of executing these

13   authorizations.  So when can you get them to him --

14          MR. JONES:  Okay.

15          THE COURT:  -- if you cannot do it by the end of the

16   week?

17          MR. JONES:  Okay.  Yes, I can, but only for the

18   medical.

19          THE COURT:  No, sir.  I've already addressed medical

20   and psychological.

21          MR. JONES:  Oh, yes.  Yes, yeah, yes.

22          THE COURT:  Stretching back five years.

23          MR. JONES:  Okay.

24          THE COURT:  When can you get the authorizations to

25   defendants' counsel if you cannot do it by the end of the

1   week?

2           MR. JONES:  Yes.  By the end -- by the end of the

3   week, but -- okay, but -- but -- what you said for the past

4   five years.  That's fine.  That's fine with me.

5           THE COURT:  Okay.  So that's the 24th day of August.

6   On or before that date get the authorizations to defendants'

7   counsel, please, sir.

8           MR. JONES:  Okay.  Yes, sir.  Yes, Your Honor.

9   Hello?

10          THE COURT:  Yes, I'm just making a note, sir.

11          MR. JONES:  Oh, okay, sir.

12          THE COURT:  All right.  I want to save time and

13  resources, so although some of the interrogatories are not

14  limited as required by the Local Rule, I don't want to be back

15  here in a couple of weeks with a new request covering turf

16  that we could get through today and keep the parties moving

17  forward.  So, I'm going to address a number of the

18  interrogatories.

19          MR. JONES:  Thank you.

20          THE COURT:  With respect to the first interrogatory,

21  Mr. Jones, your objection is overruled.  You'll have to

22  identify the witnesses to the event, if any, about whom you

23  have knowledge.

24          MR. JONES:  But, Your Honor --

25          THE COURT:  Yes, sir.

1          MR. JONES:  -- may I say, the only witnesses I have

2    are the people who were -- was there -- like the police and

3    the people who accused me of that act.

4          THE COURT:  Whomever they may be, you can identify

5    them for the defendants' counsel.

6          MR. JONES:  Okay.

7          THE COURT:  With respect to the second

8    interrogatory and interrogatory 19, to the extent that the

9    plaintiff was represented by counsel in a related criminal

10   matter, the interrogatory may capture privileged

11   communications and work product.  So to that extent, the

12   interrogatory is overly broad and I'll sustain the plaintiff's

13   objection accordingly.

14         If the interrogatory is more narrowly tailored to

15   avoid the prospect of casting such a wide net as to encompass

16   potentially privileged matter or work product, the

17   interrogatory could be submitted anew, I guess, to Mr. Jones.

18         MR. MARUTOLLO:  Okay.  And, Your Honor, just to the

19   extent Mr. Jones has indicated in this interrogatory response

20   and also in other discovery responses that he has documents

21   but that he was waiting until a time convenient for the

22   parties to actually provide them, we would just ask, Your

23   Honor, you know, if he does have documents that are not

24   privileged, you know, that are relevant to the discovery in

25   this case that he provide them, you know, as soon as he can

1   and not wait until necessarily the very end of discovery.

2          MR. JONES:  I'm sorry.  I object.  That's not what I

3   just said.  I have -- I have -- I have my trial attorney who

4   has records that I myself need.  He's trying to -- he's trying

5   to locate these things and given the fact that this is due

6   to -- in part to a -- what is called Brady violation, you

7   know, I mean -- because, I mean, these are the records that

8   you sent me.  I mean he -- Your Honor, the -- Your Honor,

9   counsel has sent me records that -- that my lawyer has no

10  knowledge of.  And, you know, I'm waiting on this information

11  to be gathered and brought -- and brought to my hands because

12  there's --

13         THE COURT:  I'm sorry.  And brought to where, sir?

14         MR. JONES:  And -- oh, excuse me -- brought to me

15  because of the fact that he's having problems located --

16  locating certain files.  I mean, he's speaking about a Brady

17  violation issue, so I'm just waiting on this documentation.

18  Once I get this stuff, I'll be more than happy to forward it.

19         MR. MARUTOLLO:  Okay.

20         THE COURT:  All right.  Mr. Jones, you need to

21  impress upon counsel who represented you in the criminal

22  matter that he or she has to provide you with information as

23  soon as possible --

24         MR. JONES:  Right.

25         THE COURT:  -- because this action is moving forward

19

1   and we cannot wait an inordinate amount of time because you

2   have in place a schedule for the completion of pretrial work.

3   And so you've got to be mindful of that schedule and press

4   that upon the attorney if he or she has got materials that are

5   responsive to the defendants' discovery demands.  They have to

6   be provided to you as soon as possible so that you can

7   surrender them.

8           MR. JONES:  Yes, sir.  Sir, he will -- he's aware of

9   this.

10          THE COURT:  Okay.

11          MR. JONES:  You know -- so -- I mean we -- I mean,

12  he's just waiting to see what comes forward.  He's -- he's --

13  you know, he's caught up in his paperwork.  He says he has

14  this information.  I need it so --

15          THE COURT:  All right.  With respect to

16  interrogatory 3, I'm overruling the objection, Mr. Jones.  If

17  you have statements that were prepared by the City or those

18  employed or associated with the City, you should provide them

19  to defendants' counsel.

20          MR. JONES:  The City?  I'm sorry.  The City or

21  State, Your Honor?

22          THE COURT:  For interrogatory 5, the objection is

23  overruled and information about your economic damages,

24  Mr. Jones, should be provided to the defendants' counsel.

25          MR. JONES:  You're speaking in terms of wages lost

1  and things of that sort?

2          THE COURT:  I'm not hearing you clear.  Could you

3  speak a little louder, sir?

4          MR. JONES:  Are you speaking in terms of wages lost

5  or anything of that sort?

6          THE COURT:  That may be part of it.  Whatever you

7  are seeking through this lawsuit.

8          MR. JONES:  Okay.

9          THE COURT:  To recover as damages, whatever amount

10  that is, however you calculate it, that's what you should

11  provide.

12          MR. JONES:  Okay.  From --

13          THE COURT:  So that that defendants understand what

14  it is by way of damages you're alleging and --

15          MR. JONES:  Okay.  I'll provide from 2008 until

16  currently.

17          THE COURT:  Okay.  Let me move to interrogatory

18  number 6.  This is an instance where --

19          MR. MARUTOLLO:  Hold on.  I'm sorry, Your Honor.

20  Just going back for one moment to that interrogatory number 5.

21          THE COURT:  Yes.

22          MR. MARUTOLLO:  I know he just mentioned 2008 to the

23  present.  I just want to be clear.  Was that Your Honor's

24  ruling or was that just plaintiff's suggestion?  I mean --

25          THE COURT:  I didn't hear a reference to 2008.  I'm

21

1  sorry.

2          MR. JONES:  Well, from -- well, I'm only claiming

3  wages lost from April 2008 until current.

4          THE COURT:  Well, as I indicated before, I don't

5  know what is in your head in terms of what you're seeking by

6  way of damages.

7          MR. JONES:  Right.

8          THE COURT:  And what you've listed in your

9  complaint.  Whatever it is that you're seeking by way of

10 damages, you need to provide that information to the

11 defendants so they'll understand that clearly.

12         MR. JONES:  Yeah.

13         THE COURT:  Whatever time frame that you're placing

14 on the damages you're claiming if you want to indicate that to

15 the defendant, you should do that also.

16         MR. JONES:  Okay.

17         THE COURT:  So they'll understand how you come to

18 whatever number or numbers you're providing to them.

19         MR. JONES:  Okay.  Understand.

20         THE COURT:  Okay.  Number 6 asks for an

21 identification of employers but going back ten years.  Why is

22 ten years an appropriate time frame?

23         MR. MARUTOLLO:  Your Honor, we based that number off

24 of other cases in the Circuit.  However, given what Mr. Jones

25 is saying, you know, we would -- we would be agreeable to some

22

1  kind of compromise perhaps from 2006 or 2005 until the present

2  or, you know, something closer to the period before 2008

3  because Mr. Jones is indicating he does have a loss income

4  claim, so we think that we should be able to at least learn

5  about where he was getting his income for that time period.

6           MR. JONES:  Okay.  Well, I mean, I didn't have a

7  state job then and too -- in the period that you're speaking

8  on.  I just had acquired that -- that job in 2008, so with

9  regards to anything prior to that as far as a claim -- a

10  damage claim that doesn't make much sense to me.  I'm -- my --

11  my employment situation from 2008 of April is what -- is

12  why -- is why I'm here now, so...

13          THE COURT:  Did you have any other employment?  You

14  mentioned state employment.

15          MR. JONES:  Well it was the State -- I was -- this

16  is the job I'm speaking of is the State job, the Metro -- New

17  York Metro DDSO.

18          THE COURT:  I understand that that's what you're

19  focusing on, but I'm asking if you had other employment.

20          MR. JONES:  Prior to --

21          THE COURT:  In the five years preceding the incident

22  out of which this action arises.

23          MR. JONES:  Yes.  Yes.  Yes, sir.

24          THE COURT:  Okay.  So you can identify who your

25  employer was.

23

 1          MR. JONES:  Okay.

 2          THE COURT:  Or if you had more than one employer who

 3   the employers were during that time frame.

 4          MR. JONES:  Okay.  Thank you, Your Honor.

 5          THE COURT:  I'm just making a note again.  Bear with

 6   me.

 7          MR. MARUTOLLO:  Thank you, Your Honor.

 8          MR. JONES:  Okay.

 9          THE COURT:  Now, interrogatory number 7 asks about

10   healthcare providers but goes back ten years.  I think this

11   might be captured in the medical and/or psychological releases

12   that will be given.  But if there are medical providers or

13   healthcare providers, Mr. Jones, whom you had that are not

14   going to be reflected in the materials that come once you send

15   the authorizations to the defendants' counsel, you should

16   advise them of the names of other healthcare providers for

17   that five-year period.

18          MR. JONES:  Okay.  The medical -- well, the  medical

19   providers from -- all right.

20          THE COURT:  Mr. Jones, I'm not hearing you clear.

21   Could you speak a little louder.

22          MR. JONES:  You said the medical providers in which

23   I have obtained over the years or from my last job?

24          THE COURT:  I'm saying that it may be the case that

25   all of the healthcare providers that you have had in the last

1  five years will be identified in the records that are provided

2  once you sign the authorizations about which we spoke earlier.

3  But if they're not all included in there, if there are other

4  healthcare providers you've had whose names, addresses, so

5  forth, will not be reflected in those medical records for

6  which the authorizations are issued, you should alert the

7  defendants to that and provide them the additional names, if

8  there are any additional names.

9          MR. JONES:  Okay.

10          THE COURT:  Now, with respect to number 8,

11  Mr. Jones, you've indicated that the work records speak for

12  themselves and that's unclear to me what it is you were

13  attempting to communicate in response to a request for

14  workers' compensation information.

15          MR. JONES:  Yeah, I never really claimed workers'

16  compensation.

17          THE COURT:  Sir, I'm not hearing you clearly again.

18  Could you speak a little louder?

19          MR. JONES:  I did not claim workers' compensation.

20          THE COURT:  And haven't for any period -- well, this

21  interrogatory spoke to ten years, but let's talk about five

22  years before the incident.  Was there any request for workers'

23  compensation?

24          MR. JONES:  Well, with respect -- with that -- I

25  mean, it's the same as with the state job.  Everything --

1    every medical and insurance I was about to acquire it for

2    was -- was with the State job.  I wasn't there --

3            THE COURT:  Yes, but you indicated to me earlier

4    that you had other jobs --

5            MR. JONES:  Yes.

6            THE COURT:  Other employers in the five years before

7    the incident.

8            MR. JONES:  Oh, okay.  So things like Blue Cross and

9    Blue Shield and things -- okay.

10           THE COURT:  I'm sorry.  I heard, I think Blue Cross,

11   but I didn't hear what else was said.

12           MR. JONES:  I -- I was saying here you're

13   referring -- referring to insurances like Blue Cross, Blue

14   Shield?

15           THE COURT:  No, I'm -- I'm referring now to workers'

16   compensation claims that may have been filed with any

17   employer --

18           MR. JONES:  Okay.

19           THE COURT:  -- you had in the five years preceding

20   the incident that gives rise to this action.  If you made no

21   such claims --

22           MR. JONES:  I never have, no.

23           THE COURT:  -- then that's the answer.  And you can

24   tell the -- the defendants that in the five years preceding

25   the incident you made no such claims.

1        MR. JONES:  Okay.

2               [Pause in the proceedings.]

3        THE COURT:  With respect to interrogatory 9, which

4  asks about applications for Social Security benefits in the

5  ten years prior to the incident, I'm not altogether clear what

6  is sought through the interrogatory when it asks about state

7  or city and other jurisdictions that provided Social Security

8  benefits.  What does that mean?

9        MR. MARUTOLLO:  Your Honor, we found that although

10 normally we would just think of the federal Social Security

11 issues, there have been cases in which other jurisdictions

12 have provided Social Security Disability benefits to different

13 litigants so we included that language in there just to be --

14 frankly on the safe side -- in case there's any other kind of,

15 I guess, obscure kind of disability benefits that is provided

16 through Social Security that is not limited to just New York

17 State or through the Federal Government.

18        THE COURT:  How is it that a state or municipality

19 could control the award of Federal benefits?

20        MR. MARUTOLLO:  Your Honor, I'm not -- frankly, I'm

21 not well versed on this particular issue, but I do know that

22 this has come up in other cases that our division has handled.

23 And we try to be as inclusive as possible with this question.

24 If there is confusion, though, I mean, I think ultimately --

25 obviously what we're looking for is just soc -- basic Social

1   Security Disability benefits in the past ten years.

2           THE COURT:  All right.  Again, why is ten years an

3   appropriate time frame?

4           MR. MARUTOLLO:  Well, I think in this particular

5   case it's significant given that the incident occurred in

6   2008.  So, you know, if we add just five years I don't think

7   that would be sufficient in this situation.

8           THE COURT:  Why is that?

9           MR. MARUTOLLO:  Because it would -- some of these

10  benefits would occur after the incident took place and we're

11  trying to figure out exactly what benefits Mr. Jones was

12  receiving at the time of the incident and prior to the

13  incident.

14          THE COURT:  All right.  So if you learned in the

15  five years before the incident that he received benefits or

16  did not receive benefits and learned whether he's currently

17  receiving benefits or has since the time of the incident, why

18  isn't that adequate information for you?

19          MR. MARUTOLLO:  That would be fine, Your Honor.

20          THE COURT:  All right.  So as now modified,

21  Mr. Jones, I think that you can answer interrogatory number 9

22  and indicate whether you receive from the Federal Government

23  Social Security Disability benefits in the five years

24  preceding the incident and since the time of the incident.

25          MR. JONES:  Your Honor, I've never received Social

1   Security benefits.

2           THE COURT:  All right.  Then that will be your

3   answer.

4           Again, I'm just making a note.  Bear with me.

5                   [Pause in the proceedings.]

6           THE COURT:  With respect to interrogatory 10, I'm

7   going to overrule your objection.  Mr. Jones, you can answer

8   whether you applied for Medicare or Medicaid and identify

9   where -- that is, the jurisdiction -- where any such

10  application was -- was made.

11          MR. JONES:  Okay.  Well, my medical records show

12  that it's Medicaid.  I've presented this to the counsel --

13          THE COURT:  Mr. Jones, I'm not hearing you again

14  clearly.  Could you speak a little louder?

15          MR. JONES:  I said -- I said the records I

16  provided -- can you hear me, sir?

17          THE COURT:  Yes, I hear you now clearly.  Thank you.

18          MR. JONES:  Okay.  The records that I submitted to

19  counsel shows that it's Medicare -- I mean, Medicaid.  You

20  know, I have no insurance except the Medicaid card.

21          THE COURT:  Again, there's a ten-year period

22  associated with the interrogatory number 10.  Is there any

23  reason why answering -- if Mr. Jones answers for the five

24  years leading up to the incident is not adequate to indicate

25  whether --

29

1            MR. MARUTOLLO:  I can --

2            THE COURT:  -- he applied to Medicare or Medicaid?

3            MR. MARUTOLLO:  I think that's a fine compromise as

4    we discussed with the other interrogatory as well.

5            THE COURT:  All right.  So, Mr. Jones, I don't know,

6    because I don't have whatever you sent to the defendants

7    previously by way of medical information.

8            MR. JONES:  Okay.

9            THE COURT:  But if that which you have already sent

10   doesn't indicate whether you made application for Medicaid or

11   Medicare in the five years prior to the incident, please let

12   the defendants know whether you made such an application in

13   that time frame.

14           MR. JONES:  Okay.  Okay.  I'll give them a copy of

15   my Medicaid card.

16           THE COURT:  Now, with respect to interrogatory

17   number 11 which asks about insurance claims associated with

18   any injuries arising out of this incident, I'm going to

19   overrule the objection.  You can indicate, Mr. Jones, whether

20   you've made any insurance claims for physical or psychological

21   injuries, but again I think going back ten years is not

22   necessary and I'll limit it to five years prior to the

23   incident.

24           MR. JONES:  Okay.  But -- no, no, I have not.  Okay.

25           THE COURT:  Interrogatory 12 asks about complaints,

1   if any, that you've made to government entities regarding the

2   incident.  If you have made complaints, Mr. Jones, you can

3   identify the agency or agencies to whom you made complaints

4   regarding the incident that gives rise to the action.

5           MR. JONES:  Okay.  I never -- I never made a

6   complaint to a government agency.

7           THE COURT:  That's fine, sir.  That's all you have

8   to answer, that you did not do it, and you move on.

9           MR. JONES:  Okay.

10          THE COURT:  All right.  On the issue of arrests and

11  time spent incarcerated, I don't see why you cannot indicate

12  to the defendants whether you have been arrested beyond the

13  circumstance that gives rise to this action, of course, we're

14  talking --

15          MR. JONES:  I've never been -- been arrested.

16          THE COURT:  All right.  Then that would be the

17  answer.

18          And I take it that you've never been convicted for a

19  crime, which would be interrogatory 14; 13 asks about arrests

20  and 14 about convictions for crime.

21          MR. JONES:  Correct.  I've never been.

22          THE COURT:  Then you can answer both 13 and 14 --

23          MR. JONES:  Okay.

24          THE COURT:  -- very quickly.  Interrogatory 15 asks

25  about other lawsuits that you've been involved in as a party.

1 And I'm going to overrule your objection.  You can identify if

2 you have been involved in any other lawsuits as a party what

3 those lawsuits are.

4          MR. JONES:  Okay.  It says identify each lawsuit to

5 which plaintiff has been a party to.  Well, I've never been

6 outside of the current -- okay.

7          THE COURT:  Number 16, I'm going to overrule the

8 objection.  And, Mr. Jones, you can indicate the occasions on

9 which you have testified or given a statement about the

10 subject matter of this lawsuit.

11          MR. JONES:  Okay.

12          THE COURT:  17 we've already addressed.  That speaks

13 to healthcare professionals.  If any are going to be a witness

14 or witnesses at the trial that goes back to the first

15 interrogatory, you have to identify that for the defendants'

16 counsel if any of your treating healthcare professionals you

17 expect to be a witness at the trial.

18          MR. JONES:  Okay.

19          MR. MARUTOLLO:  Your Honor, with respect to the

20 potential witnesses that Mr. Jones lists is it possible to

21 also ask that if he did not list them at this point that they

22 be precluded from testifying at trial?

23          THE COURT:  Well, I wouldn't --

24          MR. MARUTOLLO:  Or, you know, by the end of

25 discovery.

1          THE COURT:  Well, I wouldn't go that far at this

2    juncture because one can supplement discovery responses.  And

3    if something happens, let's say the day after discovery closes

4    that convinces Mr. Jones where previously he was not convinced

5    that a particular witness should be called at trial and he

6    were to supplement his response to provide that information, I

7    don't think that would be improper.

8          Now, you could argue down the road why that witness

9    coming the day after discovery closes should not be allowed to

10   testify and nothing would foreclose you from making

11   application down the road.

12         MR. MARUTOLLO:  Okay.

13         THE COURT:  With respect to interrogatory 18 which

14   speaks to the prospect of having expert witnesses, that

15   information, Mr. Jones, if you're going to have expert

16   witnesses you should provide their reports and the supporting

17   information as Rule 26 requires that that information be

18   exchanged.

19         MR. JONES:  Okay.

20         THE COURT:  19 I already addressed in speaking about

21   interrogatory 2 and the prospect of touching upon privileged

22   communications with the attorney who may have represented

23   Mr. Jones in the criminal matter.

24         And number 20, I'm going to overrule your objection.

25   You can indicate to the defendants' counsel whether you made

33

1  any freedom of information law request.

2         MR. JONES:  Okay.

3         THE COURT:  And what, if anything, was the result of

4  the request.

5         MR. JONES:  Okay.

6         THE COURT:  Now, the items that -- with respect to

7  the interrogatories that I have asked you to answer now,

8  Mr. Jones, how long will it take you to provide these answers?

9  I'm --

10         MR. JONES:  Okay.  I'm sorry.  Your Honor, with

11  respect to item number, what was it, 20?

12         THE COURT:  No, with respect to all of the

13  interrogatories I just reviewed -- 3, 5, 6, 7, 8, and so

14  forth -- how long will it take you to provide answers?

15         MR. JONES:  I would -- I would -- I would say -- I

16  would like about -- if it were possible, two weeks or to three

17  weeks because I'm working with one hand here.

18         THE COURT:  I'm sorry.  Again, your voice has

19  trailed off.  Could you speak a little louder, sir?

20         MR. JONES:  Can you hear me?

21         THE COURT:  Yes, I hear you now.

22         MR. JONES:  Okay.  I would like -- I'd like to

23  request about two weeks because, Your Honor, I'm working with

24  one hand here.  And I'm doing this by myself so I'm going to

25  need -- need a little time.

34

1          THE COURT:  All right.  So two weeks would bring us

2    to a holiday, so we'll make it the 4th of September.

3          MR. JONES:  The 4th of September.

4          THE COURT:  If you can provide answers sooner than

5    that -- perhaps if you could provide any when you send the

6    authorizations by the end of the week, I would urge you to do

7    that.

8          MR. JONES:  Okay.

9          THE COURT:  As soon as you can get information to

10   the defendants' counsel the better, so that the parties can

11   complete their pretrial activities timely.

12         MR. JONES:  Okay.

13         MR. MARUTOLLO:  Your Honor, if I may make one

14   request, given the -- the date just discussed and also the

15   possibility of additional witnesses being identified is it

16   possible to add a short extension of the discovery deadline

17   from October 15?  Just so we'd have enough time in order to

18   actually get the medical documents and get the documents from

19   Mr. Jones.  And frankly, Your Honor, I also have a preliminary

20   injunction hearing that's supposed to take place, a separate

21   matter, the first two weeks of October, so is it at all

22   possible to have a brief extension of the discovery deadline

23   in this matter?

24         MR. JONES:  I will be presenting my own

25   interrogatories, as well to the -- to the defendants here.

35

1          THE COURT:  So it sounds like, Mr. Jones, you are in

2    agreement that a period beyond October 15 would be appropriate

3    for you to exchange your discovery demands and receive answers

4    and responses?

5          MR. JONES:  Yes, Your Honor.

6          THE COURT:  All right.  That would intestate also

7    probably moving the time for the joint pretrial order.

8          Why don't we go to the end of October?  Is that

9    reasonable for you given the work that you expect you'll need

10   to accomplish?

11         MR. JONES:  Yes, Your Honor.  I do -- I'll do my

12   best.

13         MR. MARUTOLLO:  Your Honor, if possible to just

14   get -- just given this other hearing, is it possible to have a

15   November 9th deadline, which is a Friday, November 9th?

16         THE COURT:  All right.

17         MR. MARUTOLLO:  And then I believe the pretrial

18   order will be due 30 days after that pursuant to Judge

19   Castel's rules.

20         THE COURT:  December 10 for submission of the joint

21   pretrial order.

22         So discovery -- the period for discovery is now

23   enlarged to November 9, 2012 and the joint pretrial order

24   should be submitted to me on or before December 10, 2012.

25         MR. JONES:  Yes, Your Honor.

36

1          MR. MARUTOLLO:  Just so I'm clear, Your Honor, is

2   the -- the joint pretrial order is directed then to you?

3          THE COURT:  Yes.

4          MR. MARUTOLLO:  Okay.

5          THE COURT:  Yes.  I will make sure in reviewing it

6   with you that it complies with what the assigned district

7   judge wants.  If it does not, I'll ask you to correct it or

8   modify it.  And when it is, to my way of thinking, in harmony

9   with his requirements, then it will go off to him.

10          MR. MARUTOLLO:  Okay.

11          THE COURT:  Let me turn to the document requests.

12   There were some matters raised by the defendants with respect

13   to those.

14          With respect to document request number 2, the

15   objection is overruled except for any privileged material and

16   the plaintiff should disclose the documents related to the

17   underlying criminal case.  And I previously directed the

18   plaintiff to do that, that is to disclose these items, so that

19   needs to be done as soon as possible.

20          MR. JONES:  Yes, I'm still -- I'm still awaiting

21   that from my lawyer.

22          THE COURT:  Document request number 8, Mr. Jones

23   says that he provided information regarding complaints like to

24   the CCRB but earlier, Mr. Jones, if I understood you you said

25   you had not complained about the incident.

37

1          MR. JONES:  No.  I just -- I just -- I just filed a

2    lawsuit, so ...

3          THE COURT:  All right.  So if there are no documents

4    that are responsive to number 8, you should tell the

5    defendants' counsel that in written form.

6          MR. JONES:  Okay.

7          THE COURT:  With respect to request number 4, which

8    asks for photographs and audio, visual data, Mr. Jones, you

9    indicated that you would provide that at an agreeable time and

10   the defendants offered to copy such materials at their office

11   and so forth.  What is the hold-up in arranging to either take

12   the materials to the defendants' counsel so he can arrange for

13   copies or otherwise provide these things?

14         MR. JONES:  Well -- well because counsel had sent me

15   the inf -- sent information and the defendant had sent

16   information that was regarding statements made pertaining to

17   my criminal case.  My lawyer has -- don't -- don't have this

18   information and wasn't clear as to how this came about.  So

19   the information he has in my file, which has detailed

20   information, is all I'm waiting for.  Once I get this, I'll be

21   able to take -- take care of a lot of these requests.  But, as

22   of now, I'm still waiting.  He -- he's clear of the fact that

23   there's a time -- time restraint.  He's gathering this

24   information as we speak, so -- but there is no -- no audio or

25   video information on my behalf I'd just submit.  Everything

38

1  that was -- he -- the defendant actually provided it.

2          THE COURT:  Are there photographs?

3          MR. JONES:  I have no -- no photographs.

4          THE COURT:  And when you say you don't have -- you

5  need to communicate also that your attorney in the criminal

6  matter did not have photographs either?

7          MR. JONES:  No.  What I have are -- are diag -- what

8  I have are diagrams, you know, pertaining to the case.  My --

9  my -- the lawyer has -- has the information from the file from

10 the trial case.  I don't have these things in my possession.

11         THE COURT:  All right.  Well, you'll have to get

12 them, as I indicated before, from your previous lawyer as soon

13 as possible.  We can't -- because you have a time frame here

14 that you have to meet, you can't allow this to linger for very

15 much longer.  November will be here before you know it.

16         MR. JONES:  Yes, I know.

17         THE COURT:  And the defendants need to have

18 information well before November so that the defendants can

19 analyze the information and know what impact it will have in

20 defending against the claims you've made in the action.

21         MR. JONES:  Right.

22         THE COURT:  So as soon as you can be in contact with

23 your attorney and get whatever materials he has or she has

24 that you believe are responsive to the discovery demands.  You

25 need to do that.

39

1          MR. JONES:  Okay.

2          MR. MARUTOLLO:  Your Honor, is it possible to

3    receive a date certain with respect to these responses to

4    document requests?  I know -- I believe we have September

5    4th -- and please correct me if I'm wrong, but I believe we

6    had September 4th for the responses to the interrogatories but

7    if we could also have a date certain for these responses to

8    the document requests as well.

9          THE COURT:  Well, some of the interrogatory answers

10   may depend upon -- I think you're getting information from

11   materials that your former lawyer has.  Is that right,

12   Mr. Jones?

13         MR. JONES:  Yes.  Yes, Your Honor.

14         THE COURT:  All right.  Then I think you can make

15   the same inquiry with respect to the documents, in this case

16   these diagrams that you've been making reference to and the

17   documents that are related to the underlying criminal case and

18   surrender those by the 4th of September also.  So everything

19   will come that you have in response to the discovery demands

20   on or before September 4th, except for the authorizations that

21   you'll submit to defendants' counsel by the end of this week.

22         MR. JONES:  Right.  Okay.

23         THE COURT:  All right.

24         MR. MARUTOLLO:  Your Honor, may I just have one

25   other brief issue I want to raise with the Court?  On the

40

1  docket sheet in this matter I notice on the PACER docket

2  sheet.  There's a defendant listed as a Lucy Callahan and,

3  Your Honor, I'm not sure exactly why this individual is

4  listed.  She's not a City defendant.  She's not, you know,

5  employed by the City of New York but -- and she's also not

6  listed as a defendant in any of the -- in the amended

7  complaint, so I wasn't sure if that was an error with the

8  court clerk or if there's another issue.

9         MR. JONES:  Okay.  Lucy Callahan is the -- is the --

10 she's a person who -- who works at Metro DDSO.  She's a

11 manager.  And she's the one who in turn made these statements

12 regarding the mirror that set this case into a frenzy.  And

13 basically my trial lawyer was stating how -- how in the grand

14 jury minutes things were not spoken as such, but then they did

15 an investigation -- internal investigation in which Lucy

16 Callahan had -- had put on record at the Grand Jury and at

17 trial that this incident was visualized through a mirror.

18 Okay.  Now, that's how she came about.  Now these -- some of

19 these documents are a part of this file I'm waiting for.  So I

20 can give you more clarity there once I get the file.

21         THE COURT:  Anything else from either party?

22         MR. MARUTOLLO:  No, Your Honor.

23         THE COURT:  Thank you very much.  Good day.

24                    * * * * * *

25

41

1            I certify that the foregoing is a court transcript

2   from an electronic sound recording of the proceedings in the

3   above-entitled matter.

4

5   _____

6                           Ruth Ann Hager, C.E.T.**D-641

7   Dated:  August 28, 2012

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25